## Graham & Co. and P. N. Jarvis *vs* Holt, Breden, &c.

CHANCERY. 121 $\frac{4\text{bm}}{}$ $\frac{61'}{240}$

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Assignments. Mechanic's lien in Louisville.*

*Case 14.*

JUDGE MARSHALL delivered the opinion of the Court.

*Sept. 23.*

GRAHAM & Co. lumber merchants, and P. N. Jarvis, a carpenter, filed this bill, asserting liens under the statute, for lumber furnished by the former and work done by the latter, on a house built by D. Holt on a lot in Louisville, leased by him from Rudd, of which leasehold Breden has since become the proprietor. On the hearing, the bill as to Graham & Co. was dismissed, without prejudice to any other remedy on the note taken by them for the balance of their account, and the claim and prayer of Jarvis for a lien, &c. was also dismissed. A writ of error is prosecuted to reverse this decree.

*Case stated.*

As to the claim of Jarvis, we are of opinion that the decree was right, because at the time when this work was done by Jarvis, Holt had counter demands against him, more than sufficient to discharge the fair price of this work, and which, in effect, left no debts due from him to Jarvis for this work; and even though, by a subsequent change in the state of the accounts, the balance may have turned in favor of Jarvis, and so existed at the filing of the bill, which, however, does not satisfactorily appear in this case, and though it were conceded that under the circumstances, the lien accrued in the first instance, still it would seem to be inequitable to enforce it for this particular demand, when the interest of Holt in the subject of the lien had, in the mean time, been transferred to Breden, an innocent purchaser.

*If there be mutual accounts between builder & mechanic, and there be no balance due to the mechanic at the filing of the bill, he can have no relief, especially against an innocent purchaser of the property.*

But we do not concur with the Chancellor as to the lien of Graham & Co. It appears satisfactorily, though not conclusively, that lumber to the value of their claim, as charged in their account G, was furnished by them to Holt, and used in the house mentioned in the bill as the

*A conveyance of property to a Trustee to secure the payment of a sum due to a mechanic in Louisville for which he has a*

GRAHAM & Co.
AND JARVIS.
vs
HOLT, &c.

lien, which was not accepted, does not affect the lien.

subject of the lien; that on settlement, a note for the balance of $120 was executed by Holt to them, which note, after having been assigned by them and indorsed by their assignee and others, was negotiated at Bank, and not being paid by the maker, was taken up by Graham & Co. and is exhibited by them as part of their bill. It also appears that Holt, before this bill was filed, being about to leave the State, executed a deed of trust, purporting to convey property therein mentioned, for the payment or security of various specified debts, of which this debt to Graham & Co. seems to be one. But as they deny having ever accepted or assented to the deed, or received or claimed any benefit from it, we suppose it cannot affect their lien, not being a security taken by them. And if the deed does in fact furnish any security for this debt, Breden, should he be compelled to pay it by the enforcement of the statutory lien, might perhaps be entitled, by substitution, to the benefit of such security.

But the question in this case is, whether the lien given by the statute for the price of the lumber furnished by Graham & Co. is lost by reason of the note being taken, assigned away, negotiated at Bank and taken up by the payees though remaining still unpaid by the maker? If it is not, then having been properly asserted by bill filed within a year from the time the lumber was furnished it should have been enforced.

The taking a note by a mechanic in Louisville for a debt for which he has a lien, and the negotiation of that note at Bank, does not release the lien, if payee is compelled to take up the note provided he file his bill within the year to enforce the lien.

The taking of the note has no other effect upon the lien than to suspend its enforcement until the credit given in the note has expired. It is not in itself the security, the taking of which prevents the lien from attaching, or destroys it under the 4th section of the statute. It is but the personal obligation of the debtor, evidenced in a form more convenient and useful to the creditor than the original simple contract. In giving the lien, the statute did not intend to destroy the personal obligation of the debtor, nor to prevent its being evidenced in the form of a note. The security which will prevent or destroy the lien is something in addition to this personal obligation and in aid of it, and which, so far as it is realized for the benefit of any holder of the debt, will discharge the debtor's obligation to pay it. Construing the statute literally, this

security, in order to effect the lien, must be taken by the person to whom the lien is given. And if no such security be taken by the mechanic or material man, the lien attaches and stands enforcible by bill filed by him within the year, making a clear and distinct statement of the claim, &c. Up to the filing of the bill, the statute places no other restriction or condition upon the existence or enforcibility of the lien. What then is to be the effect of the assignment of the note for value received by the payee, under his responsibility as assignor, and his regaining the note by refunding the consideration received for it, either before or after it becomes due, but while it is still unpaid by the maker? Surely it would be a perversion of the statute and of the transaction itself, to say that this responsibility of the assignor is such security as destroys the lien, or that his payment to his assignee in obedience to that responsibility, should have that effect. The lien is given to secure the debt from the employer or owner to the mechanic or material man. If any other security be taken for that debt there is no lien. Now suppose it were conceded that the assignee, immediate or remote, of the mechanic or material man, being the proprietor of the debt from the employer or builder, may destroy the lien irrecoverably by taking security for that debt, the assignment itself, by which alone he becomes proprietor of the debt, cannot be a security for the debt taken by the proprietor, for he is not proprietor until the assignment is made. The responsibility of the assignor does indeed afford to the assignee a security for his reimbursement, in addition to that which the obligation of the maker affords, but it is a security that does not come in aid of the obligor himself nor of his indebtedness. A payment by the assignor to the assignee is not a payment of the obligor's debt for which the lien is given. It does not operate to discharge his obligation to pay that debt, and create a new obligation to indemnify or reimburse the assignor, as in case of ordinary securities, but leaves the original obligation unperformed and still enforcible, without any other security for its performance or any other mode of enforcing it than if it had never been assigned.

Conceding that every assignor is in some sense surety or security for the payment of the note assigned, and that in this case, all the indorsers were securities to the Bank for the payment of the note—still we say, the debt intended to be secured by the statutory lien was the debt due to Graham & Co. for their materials used in Holt's building. The security which will prevent or destroy the lien, must be a security which is intended to come in place of the lien and to secure payment for the materials; something which, as far as it is available, may avail towards the payment of that debt. It is not such security as the creditor himself may furnish, in order to enable him to realize at once, by negotiating the note of his debtor, the price of his materials. Though he may thus obtain the money, the debt for materials remains unpaid, and his responsibility for the payment of the note to the assignee does not come in place of the lien, and could not have been so intended or regarded, for his payment under this responsibility will leave the debt for the materials still unpaid, and will leave him a creditor therefor, as he was before the assignment. For the same or a similar reason, it is not such security as any subsequent assignor or indorser, to whom the original payee is responsible, may furnish to his assignee, or such as any assignee may take, leaving the responsibility of the payee unaffected. For unless the avails of the security taken would, if realized, go in discharge of the responsibility, either of the original debtor or of the original creditor, or both, it cannot operate to the same end as the lien given by the statute, and therefore, cannot be regarded as such security as will, in view of the statute, displace the intended lien. There is no such security in this case.

It is contended, however, that the statute gives the lien to the mechanics and material men only, and that it is destroyed by the assignment of the note for the debt which it was intended to secure. We do not concede this to be a legitimate conclusion from the premises stated, nor from the additional fact that the statute provides only for the enforcement of the lien by those persons to whom it is given. The question is not to whom

the lien belongs, or by whom it may be asserted in case the debt be assigned, but whether it is thereby destroyed. It is immaterial whether it passes wholly to the assignee, so as that he may enforce it without even making the original creditor a party, which, however, we suppose should not be allowed, or whether a beneficial interest in it passes, to be enforced in the name or with the assent of the original creditor as a party, or whether it remains wholly in the original party, who still continues responsible for the debt, and is to be enforced only when by again becoming the holder of the note, he is again the creditor.   The statute gives an express lien for the benefit of the mechanics and material men referred to; it no where says, however, that it shall not be assignable, or that it shall be destroyed by the assignment of the debt which it is intended to secure.   Were it conceded then, that in consequence of the particular mode pointed out for its enforcement, it does not, as other express liens do, pass absolutely to the assignee of the debt, it would be depriving the statute of the beneficial operation it was intended to have, to give it such construction as would prevent the mechanic or material man from using, according to the exigences of his business, the debt, for the security of which the lien is given, but at the peril of losing the security.   The statute did not intend to prohibit the taking of a note, nor to restrict the use of it, nor, as we think, to make the destruction of the lien the consequence of the transfer of the debt.   If then it does not pass to the assignee, it remains with the payee as ultimate security for the debt for which he generally becomes responsible by his assignment.   And if the debt be due and unpaid, he may, within the year, enforce the lien for his own sole benefit, if he have taken up the note, or for the benefit of himself and the assignee, if the latter is willing to indulge him by awaiting the result of that remedy.

We conclude, therefore, that Graham & Co. had not lost their lien by reason of any of the facts above stated, but that it was still subsisting and should have been recognized and enforced in the usual mode.

Wherefore, the decree dismissing their bill, without pre-

judice, is reversed, and the cause remanded for a decree and further proceedings not inconsistent with this opinion.

*Guthrie and Minor* for plaintiffs: *Pirtle* for defendants.